**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| In re:<br><br>DANTRA HEALTHCARE, INC., <u>et al.</u>,[1]<br><br>                Debtors. | Chapter 11<br>Case No. 13-35419<br>Jointly Administered |

<u>**NOTICE OF MOTION**</u>

        PLEASE TAKE NOTICE THAT on October 7, 2013, the Debtors filed this **MOTION OF DEBTORS FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL HEARING** (the "<u>Motion</u>").

        PLEASE TAKE FURTHER NOTICE THAT **on October 8, 2013 at 2:00 p.m. (Prevailing Eastern Time), a hearing on the Motion shall take place before the Honorable Keith L. Phillips, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Eastern District of Virginia, Fifth Floor, Courtroom 5100, 701 East Broad Street, Richmond, Virginia 23219**, at which time you may appear if you deem fit.

        *[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

---

[1]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: DANTRA Healthcare, Inc. (8010); S. A. Medical of Virginia, Inc. (7167); King George Medical Center, LLC. (6801); and Southpointe OBGYN, LLC (5938). The location of the Debtors' service address is: 125 Olde Greenwich Dr, Ste 160 Fredericksburg, Virginia 22408.

Robert S. Westermann (VSB No. 43294)
Rachel A. Greenleaf (VSB No. 83938)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone:        804.771.9500
Facsimile:        804.644.0957
E-mail:  rwestermann@hf-law.com
                rgreenleaf@hf-law.com

*Proposed Counsel for the Debtors*
*and Debtors-in-Possession*

Dated: October 7, 2013

By: /s/ Robert S. Westermann
                Counsel

Robert S. Westermann (VSB No. 43294)
Rachel A. Greenleaf (VSB No. 83938)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone:  (804) 771-9500
Facsimile:   (804) 644-0957
E-mail: rwestermann@hf-law.com
        rgreenleaf@hf-law.com

*Proposed Counsel for the Debtors*
*and Debtors-in-Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

|  |  |
|---|---|
| In re:<br><br>DANTRA HEALTHCARE, INC., et al.,[1]<br><br>　　　　Debtors. | Chapter 11<br>Case No. 13-_____<br>Jointly Administered |

### MOTION OF DEBTORS FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL HEARING

DANTRA Healthcare, Inc., and its affiliates, as Debtors and Debtors-in-Possession (collectively, the "Debtors"), [2] by their proposed counsel, hereby moves (the "Motion"), pursuant to sections 361, 362, 363 and 364 of Title 11 of the United States Code (the "Bankruptcy Code"), for entry of interim and final orders (the "Cash Collateral Orders") (i) authorizing the Debtors to use Cash Collateral on an interim basis pending final approval; (ii) granting the Lenders (defined below) adequate protection upon the terms set forth in interim and final orders; and (iii)

---

[1]　　The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include:  DANTRA Healthcare, Inc. (8010); S. A. Medical of Virginia, Inc. (7167); King George Medical Center, Ltd. (6801); and Southpointe OBGYN, LLC (5938).  The location of the Debtors' service address is:  125 Olde Greenwich Dr, Ste 160 Fredericksburg, Virginia 22408.

[2]　　Capitalized terms used but not defined herein shall have the meanings set forth in the Tate Declaration.

---

Robert S. Westermann (VSB No. 43294)
Rachel A. Greenleaf (VSB No. 83938)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone:　　804.771.9500
Facsimile:　　804.644.0957
E-mail:  rwestermann@hf-law.com
　　　　rgreenleaf@hf-law.com

*Proposed Counsel for the Debtors*
*and Debtors-in-Possession*

scheduling a final hearing on the Motion and approving the form and manner of notice thereof.

In support of this Motion, the Debtors respectfully represent as follows:

**CONCISE STATEMENT REQUIRED BY RULE 4001(B)(1)(B)
OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

(i)    Name of Each Entity with an Interest in the Cash Collateral:

    a)  Virginia Partners Bank

    b)  Mary Washington Healthcare

    c)  StellarOne Bank

(ii)    Purposes for the Use of the Cash Collateral:

    The Cash Collateral will be used for reasonable and necessary general operating and administrative expenses during the Debtors' reorganization.

(iii)    Material Terms, Including Duration, of the Use of the Cash Collateral:

    The Debtors seek to use the Cash Collateral, on an interim basis, in accordance with the budget set forth as **Exhibit A**.

(iv)    Proposed Adequate Protection

    a)  Virginia Partners Bank:  The Debtors propose no adequate protection to Virginia Partners Bank.  The majority of the assets of Southpointe OBGYN LLC ("Southpointe") were sold pre-petition.  The only remaining asset of Southpointe is accounts receivable in which Virginia Partners Bank has a first-priority perfected lien.  The Debtors and Virginia Partners Bank have reached a consensual agreement on the usage of Southside's accounts receivable, whereby S. A. Medical of Virginia, Inc., ("S. A. Medical") will collect, for a fee, the accounts

receivable, which will be remitted directly to Virginia Partners Bank to further reduce its secured debt.

b) Mary Washington Healthcare: The Debtors propose no adequate protection as Mary Washington Healthcare's lien on Southpointe's assets is subordinate to Virginia Partners Bank's lien and there is no equity in the remaining asset (the accounts receivable) to which Mary Washington Healthcare's lien may attach.

c) Stellar One Bank: The Debtors propose to grant Stellar One Bank a replacement lien in post-petition cash collateral and assets to the same extent and priority as Stellar One Bank had pre-petition.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

2.     Venue in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division, with respect to the bankruptcy proceedings and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory predicates for the relief requested herein are sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## FACTUAL BACKGROUND

**A.     General Background**

4.     On October 7, 2013, (the "Petition Date"), each of the Debtors filed with the Court voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, commencing the above-captioned Chapter 11 cases.

5.    The Debtors continue in the possession of their property and continue to operate and manage their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.    No trustee or examiner has yet been appointed in these cases, and no committees have yet been appointed or designated.

7.    S. A. Medical provides medical billing services to medical practices.

8.    DANTRA Healthcare, Inc., ("DANTRA") is the shell parent organization of King George Medical Center, Ltd. ("King George") and Southpointe OBGYN, LLC ("Southpointe").

9.    King George is the only affiliate that currently provides actual medical services, which it does through three different practices:  KGMC Family Practice, Gateway Medical Urgent Care, and King George Pediatrics.

10.    Southpointe is no longer operating.  The majority of the assets of Southpointe was sold pre-petition.  The only remaining asset of Southpointe is its accounts receivable.

11.    The Debtors are borrowers under numerous loans which contains cross-guarantees and cross-collateralization provisions.

12.    A full description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' Chapter 11 cases, is set forth in full in the Declaration of Dana P. Tate in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings (the "Tate Declaration"), which was filed contemporaneously with this Motion and which is incorporated herein by reference.  Additional facts in support of the specific relief sought herein are set forth below.

**B.    Cash Collateral**

13.    The Debtors are obligated in accordance with the following:

i.      <u>**Southpointe**</u>

14.     Under a loan agreement entered into on December 23, 2011, Southpointe granted to Virginia Partners Bank a security interest in substantially all of Southpointe's assets.

15.     Under a loan agreement dated September 10, 2012, Southpointe granted to Mary Washington Healthcare a subordinate security interest in substantially all of Southpointe's assets.

16.     In September 2013, Southpointe sold its assets to an unrelated third-party. Southpointe's only remaining asset is its accounts receivable. Southpointe and Virginia Partners Bank have reached a consensual agreement for the collection and payment of the accounts receivable. Under the agreement, S. A. Medical collects the accounts receivable for Southpointe. Collected accounts receivables are deposited into a bank account at Virginia Partners Bank. S. A. Medical then bills Virginia Partners Bank for the cost of its collection efforts. The remainder of the collected accounts receivable will be paid toward the balance of the Virginia Partners Bank loan.

17.     As the balance of Virginia Partners Bank's loan exceeds the value of the collateral (the accounts receivable), there is no equity to which Mary Washington Healthcare's liens may attach.

ii.     <u>**S. A. Medical**</u>

18.     S. A. Medical granted to Stellar One Bank a security interest in substantially all of S. A. Medical's assets. This loan was cross-collateralized with substantially all of DANTRA's assets.

19.     Provided the liens were and remain properly perfected, Stellar One Bank's security interests and liens have attached to substantially all funds and property of S. A. Medical, including the product, issues, rents, profits, and other proceeds of the Prepetition Collateral.

20.     Provided the liens were and remain properly perfected, Stellar One Bank's security interests and liens shall, notwithstanding the commencement of these Chapter 11 cases, attach to all of S. A. Medical's Cash Collateral.

### c.     DANTRA

21.     DANTRA has granted to Stellar One Bank a security interest in substantially all of DANTRA's assets, through two older loans and a cross-collateralization provision in a more recent loan from Stellar One Bank to S. A. Medical.

22.     Provided the liens were and remain properly perfected, Stellar One Bank's security interests and liens have attached to substantially all funds and property of DANTRA, including the product, issues, rents, profits, and other proceeds of the Prepetition Collateral.

23.     Provided the liens were and remain properly perfected, Stellar One Bank's security interests and liens shall, notwithstanding the commencement of these Chapter 11 cases, would attach to all of DANTRA's Cash Collateral.

24.     DANTRA has nominal monthly income and expenses, operating as a corporate shell parent company for certain Debtors and non-debtor affiliates.

### d.     King George Medical Center

25.     On information and belief, King George Medical Center, Ltd., has not pledged any of its assets as security for a loan.  Therefore, the Debtors do not need and do not request court approval to use post-petition cash.

### C.     The Debtors' Need for Use of Cash Collateral

26.     In the ordinary course of business, the Debtors require cash on hand and cash flow from their operations to fund their working capital and liquidity needs.  In addition, the Debtors require cash on hand to fund these Chapter 11 cases while seeking to reorganize their

business.   Post-petition use of the Cash Collateral is necessary in order for the Debtors to preserve sufficient liquidity to maintain ongoing day-to-day operations and fund their working capital needs.

27.      If the Debtors are unable, on a consistent basis, to maintain their businesses and demonstrate financial stability to existing and future clients, the businesses will lose existing clients, employees, and vendors, will be unable to attract new clients, and will be forced to cease operations.   Therefore, the use of Cash Collateral is essential to the Debtors' continued ability to operate, to maintaining the value of their assets, and to the success of these Chapter 11 cases.

28.      The Debtors believe that the proposed adequate protection herein is sufficient to protect any diminution in the value of the Lenders' interests and is fair and reasonable.   The Lenders will be adequately protected and, as a result, will not be prejudiced in any way by the Debtors' use of Cash Collateral.   Given these circumstances, the Court should authorize the use of Cash Collateral on the terms and conditions set forth herein and in accordance with the Budget, attached hereto as **Exhibit** **A**.

### **RELIEF REQUESTED**

29.      By this Motion, the Debtors seek entry of the Interim Order and Final Order, pursuant to sections 105(a), 361, 362, 363 and 364 of the Bankruptcy Code, (i) authorizing the Debtors to use the Cash Collateral; (ii) granting the Lenders adequate protection upon the terms set forth in the Interim Order and Final Order; and (iii) scheduling a final hearing on the Motion and approving the form and manner of notice thereof.

30.      The Debtors have submitted herewith a proposed interim order granting the relief requested herein (the "Interim Order").  Attached hereto as **Exhibit** **A** is an operating budget (the

"Budget") which will govern the use of the Cash Collateral.  Certain of the terms of the Interim

Order are summarized below:

| Term | Brief Summary |
|---|---|
| **Use of Cash Collateral** | The Debtors are authorized to use Cash Collateral on an interim basis pending a final determination by the Court upon the terms and conditions set forth in the Interim Order and in accordance with the Budget from the Petition Date through and including the date of the final hearing on the Debtor's use of Cash Collateral. |
| **Adequate Protection** | The following adequate protection (collectively, the "Adequate Protection") shall be provided:<br><br>Furthermore, the Debtors shall continue to operate their businesses, and in doing so, shall preserve the value of the Debtors' estates. |
| Virginia Partners Bank | Virginia Partners Bank:  The Debtors propose no adequate protection to Virginia Partners Bank.  The assets of Southpointe OBGYN LLC ("Southpointe") were sold pre-petition.  The only remaining asset of Southpointe is accounts receivable.  The Debtors and Virginia Partners Bank have reached a consensual agreement on the collection of Southpointe's accounts receivable. |
| Mary Washington Healthcare | Mary Washington Healthcare:  The Debtors propose no adequate protection as Mary Washington Healthcare's lien on Southpointe's assets is subordinate to Virginia Partners Bank's lien and there is no equity in the remaining asset (the accounts receivable) to which Mary Washington Healthcare's lien may attach. |
| Stellar One Bank | The Debtors propose to grant Stellar One Bank a replacement lien in the Debtors' post-petition cash collateral and assets to the same extent and priority as Stellar One Bank had pre-petition. |

31.    The foregoing is only a brief summary.  The terms of the Debtors' use of Cash

Collateral are set forth in detail in the attached Interim Order.  **In the event of any inconsistency**

**between the above summary and the Interim Order, the terms of the Interim Order shall**

**control.  Interested parties should review the Interim Order for a complete and accurate**

**understanding**.

32.     The relief requested herein is in the best interests of the Debtors, their estates, and creditors.  Absent such relief, the Debtors will experience immediate and irreparable harm and their reorganization efforts will be jeopardized.

## BASIS FOR RELIEF

### A.     Legal Standard

33.     A debtor-in-possession has the rights and powers, and must perform all the functions and duties of a trustee.  11 U.S.C. § 1107(a).

34.     A debtor's use of property of its estate is governed by section 363 of the Bankruptcy Code, which provides in pertinent part that:

> If the business of the debtor is authorized to be operated under Section . . . 1108 . . . of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

35.     A debtor may use cash collateral with the consent of the court:

> (2)   The trustee [or debtor-in-possession] may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
>
> > (A)   each entity that has an interest in such cash collateral consents; or
> >
> > (B)   the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).  The Court has authority to approve use of cash collateral even if the secured creditor does not consent.

36.     Section 363(e) of the Bankruptcy Code requires a debtor to adequately protect the secured creditors' interest in property to be used by a debtor against any diminution in value of

such interest resulting from the debtor's use of the property during the Chapter 11 case.   11 U.S.C. § 363(e).

37.      What constitutes sufficient adequate protection is decided on a case-by-case basis. See In re Swedeland Dev. Group. Inc., 16 F.3d 552, 564 (3d Cir. 1994); MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1396 (10th Cir. 1987); In re Martin, 761 F.2d 472 (8th Cir. 1985); In re George Ruggiere Chrysler-Plymouth, Inc., 727 F.2d 1017, 1019 (11th Cir. 1984); In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); In re Columbia Gas Sys., Inc., Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); In re Realty Southwest Assocs., 140 B.R. 360, 366 (Bankr. S.D.N.Y. 1992).   By requiring adequate protection, the Bankruptcy Code seeks to shield a secured creditor from diminution in the value of its interest in its collateral during the period of use by the debtor-in-possession.   See In re Hubbard Power & Light, 202 B.R. 680 (Bankr. E.D.N.Y. 1996); In re 495 Cent. Park Ave. Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); In re Glasstream Boats, Inc., 110 B.R. 611, 613 (Bankr. M.D. Ga. 1990);   In re Beker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986). Adequate protection can come in various forms, including payment of adequate protection fees, payment of interest, granting of replacement liens, and administrative claims.

**B.      The Debtors Have a Vital Need to Access Cash Collateral Immediately**

38.      A debtor's cash "is the life's blood of the business," and the bankruptcy court must ensure that cash "is available for use even if to a limited extent." In re Mickler, 9 B.R. 121, 123 (Bankr. M.D. Fla. 1981).   Courts typically authorize a debtor to use cash collateral to continue its operations so long as the interest asserted by any affected secured creditor in such cash collateral is adequately protected.   Thus, courts are required to balance the debtor's need to use cash collateral in its reorganization effort against the secured creditor's need for adequate

protection.  Stein v. U.S. Farmers Home Admin. (In re Stein), 19 B.R. 458, 459 (Bankr. E.D. Pa.

1982).  In ruling whether a secured creditor is adequately protected early in a case, courts "will

generally permit the business operation to continue, at least to the point of plan formulation, if

the debtors make a solid evidentiary showing to support their projections . . . ."  In re Dynaco

Corp., 162 B.R. 389, 395 (Bankr. D.N.H. 1993).

39.     Consistent with these principles, courts repeatedly have recognized that use of

cash collateral is appropriate where necessary to preserve a debtor's ability to reorganize and

thus maximize the value of an estate for all interested parties.  See, e.g., id. at 394 (granting a

motion for the use of cash collateral and stating that "the purpose of Chapter 11 is to rehabilitate

debtors and generally access to cash collateral is necessary in order to operate a business");

George Ruggiere Chrysler-Plymouth, Inc., 727 F.2d at 1020 (allowing debtor to use cash

collateral over secured creditor's objection after noting that "[w]ithout the availability of cash to

meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy

favoring rehabilitation over economic failure would be frustrated.");  In re O'Connor, 808 F.2d at

1399 (permitting debtor to use cash collateral after finding that there was only a low risk that

secured creditor's interest would diminish).

40.     Here, the Debtors have a vital need to use Cash Collateral.  Without access to

Cash Collateral, the Debtors will not be able to provide regular services to clients and pay

vendors, employee wages, and similar expenses.  The Debtors' inability to do any of these would

cause immediate and irreparable harm to their estates.

41.     The alternative to allowing access to the Cash Collateral is "to force the debtors to

close down their operations and thus doom any effort at reorganization which will hopefully

extract the maximum value of the assets involved to the benefit of _all_ classes of creditors and

other constituencies involved in this case." In re Dynaco Corp., 162 B.R. at 396 (emphasis in original). This harsh outcome would be catastrophic and would stand in diametrical opposition to the rehabilitative purpose of Chapter 11.

42.    The Debtors' ability to finance their operations and the availability to the Debtors of sufficient working capital and liquidity through the use of Cash Collateral is vital. Without use of the Cash Collateral, the Debtors will have insufficient ability to operate their businesses. If its business is ceased, then immediate and irreparable harm will be caused to the Debtors and their creditors. The Debtors, therefore, seek immediate authority to use the Cash Collateral as set forth in the Motion and in the Interim Order to prevent immediate and irreparable harm to their estates, pending a final hearing pursuant to Bankruptcy Rule 4001(c).

43.    Accordingly, as the Debtors require the use of Cash Collateral, they submit that they have satisfied the requirements of Bankruptcy Rule 6003 to support immediate Cash Collateral availability.

### C.    The Lenders Are Adequately Protected

44.    As noted above, a debtor's authority to use Cash Collateral is typically conditioned on providing "adequate protection" to secured creditors that assert an interest in such cash. "The concept of 'adequate protection' is not defined in the [Bankruptcy] Code except by the implications of the examples of adequate protection listed in [Bankruptcy Code Section 361 of the Bankruptcy Code]." In re Beker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986). Section 361 identifies various types of adequate protection, including cash payments, additional liens, replacement liens, and such other relief that will result in the realization by the secured creditor of the "indubitable equivalent" of its interest in its collateral. 11 U.S.C. § 361.

45.     The determination of adequate protection is a fact-specific inquiry that is to be made on a case-by-case basis.  See, e.g., MBank, 808 F.2d at 1396-97 (the determination is a question of fact "which is to be decided flexibly on the proverbial 'case-by-case' basis") (citing Martin, 761 F.2d at 474); Mosello, 195 B.R. at 289 (the determination "is left to the vagaries of each case"); see also In re Royal d'Iberville Corp., 10 B.R. 37, 39 (Bankr. S.D. Miss. 1981) ("Opinions as to what is adequate protection must be determined on a case-by-case basis and opinions will vary greatly from court-to-court because adequate protection is not defined in the Bankruptcy Code.").  Furthermore, in determining adequate protection, "[t]he equities in each case must be weighed in striking a balance." Stein, 19 B.R. at 459.

46.     The focus of the adequate protection requirement is to preserve the secured creditor's position at the time of the bankruptcy filing and protect the secured creditor from diminution in the value of its collateral during the reorganization process. See Mosello, 195 B.R. at 288; Beker, 58 B.R. at 736.  See also In re WorldCom, Inc., 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004) ("The legislative history for Section 361 of the Bankruptcy Code, which sets forth how adequate protection may be provided under Section 363, makes clear that the purpose is to insure that the secured creditor receives the value for which the creditor bargained for prior to the debtor's bankruptcy.").

47.     To determine whether an entity is entitled to adequate protection, and the type and the amount of adequate protection required, a court must evaluate the value of the collateral, the creditor's interest in the collateral, and the extent to which that value will decrease during the course of the bankruptcy case. In re Wrecclesham Grange, Inc., 221 B.R. 978, 991 (Bankr. M.D. Fla. 1997).  The proper measurement date is the petition date.

48.     Upon information and belief, Virginia Partners Bank, Mary Washington Healthcare, and Stellar One Bank (together, the "Lenders") have a blanket security interest on substantially all of certain of the Debtors' assets, including an interest in the Cash Collateral.

49.     Here, the adequate protection proposed by the Debtors will fully protect the Lenders.

a.     The Debtors propose to provide no adequate protection to Virginia Partners Bank.  The assets of Southpointe OBGYN LLC ("Southpointe") were sold pre-petition.  The only remaining asset of Southpointe is accounts receivable.  The Debtors and Virginia Partners Bank have reached a consensual agreement on the usage of Southpointe's accounts receivable.

b.     The Debtors propose no adequate protection as Mary Washington Healthcare's lien on Southpointe's assets is subordinate to Virginia Partners Bank's lien and there is no equity in the remaining asset (the accounts receivable) to which Mary Washington Healthcare's lien may attach.

c.     The Debtors propose to provide Stellar One Bank with Replacement Liens in post-petition cash collateral and assets to the same extent and priority as Stellar One Bank had pre-petition.  Under such a lien, Stellar One Bank will not be harmed if the Debtors use the Cash Collateral to continue operations, because such use will generate more cash and accounts receivable.  The budget shows positive cash flow and net income, therefore, authorizing the use of Cash Collateral will not diminish the

value of the cash.  Further, allowing the use of the Cash Collateral will

preserve the estates by allowing the Debtors to continue to operate.

50.     Furthermore, the Debtors shall continue to operate their businesses, and in doing

so, shall preserve the value of the Collateral.

51.     Based on the foregoing, the Debtors submit that the proposed adequate protection

will fully protect the Lenders from any diminution in the value of their interests in the Cash

Collateral and is fair, reasonable and sufficient to satisfy the requirements of the Bankruptcy

Code.  Accordingly, the adequate protection proposed herein and in the Interim Order is fair and

reasonable and sufficient to satisfy the requirements of sections 363(c)(2) and (e) of the

Bankruptcy Code.

52.     Entry of an order approving the use of Cash Collateral is in the best interests of

the Debtors, their estates, and their creditors and parties-in-interest.  The Debtors are unable to

obtain post-petition credit from outside parties.  Because substantially all of the Debtors' assets

are already encumbered with liens, the Debtors are unable to obtain, in the ordinary course of

business or otherwise, unsecured credit allowable as an administrative expense pursuant to

section 503(b)(1) of the Bankruptcy Code in an amount necessary for the maintenance and

preservation of their assets and business operations on more advantageous economic and non-

economic terms than those offered under the proposed Order.

**D.     Mary Washington Healthcare Has the Burden of Proving It Holds an
        Enforceable, Non-Avoidable Security Interest**

53.     For motions to use cash collateral, "[t]he entity asserting an interest in property

has the burden of proof on the issue of the validity, priority, or extent of such interest."   11

U.S.C. § 363(p).

54.     The amount of Virginia Partners Bank's liens exceeds the value of Southpointe's assets.  As such, the interest of Mary Washington Healthcare is unsecured.

**E.     The Requirements of Bankruptcy Rules 4001(b)(2) and 6003(b) Have Been Satisfied**

55.     Pursuant to Bankruptcy Rule 4001(b)(2), a minimum of fourteen days' notice is required before a final hearing on this Motion may take place.  The same rule, however, also provides that the Court "may conduct a preliminary hearing before such 14-day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing."  Fed. R. Bankr. P. 4001(b)(2).

56.     In addition, Bankruptcy Rule 6003(b) provides that, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition," grant relief upon "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate . . . ."  Fed. R. Bankr. P. 6003(b).

57.     As set forth above, the Debtors have an immediate and urgent need to use Cash Collateral.  Absent the use of Cash Collateral, the Debtors will not be able to meet their working capital and liquidity needs, and their estates and creditors will suffer immediate and irreparable harm.  Accordingly, the Debtors submit that the requirements of Bankruptcy Rules 4001(b)(2) and 6003(b) have been satisfied.

**F.     The Court Should Schedule a Final Hearing**

58.     Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that the Court schedule a final hearing on the Motion as soon as practicable, but in no event later than thirty (30) days following the entry of an interim order, and fix the date prior to the final hearing for the filing of objections to the Motion.

## NOTICE

59.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the Eastern District of Virginia; (ii) the entities listed on the Debtors' lists of creditors holding the twenty largest unsecured claims; (iii) any parties known by the Debtors claiming to have liens on or security interests in the Cash Collateral; and (iv) certain governmental agencies that may have an interest in these proceedings.  The Lenders were provided a copy of the Notice and the Motion via overnight mail on October 7, 2013.  The Debtors submit that, under the circumstances, no other or further notice of the Motion is required.

## WAIVER OF MEMORANDUM OF LAW

60.     Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Debtors request that the requirement that all motions be accompanied by a separate memorandum of law be waived.

## NO PRIOR REQUEST

61.     No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors request that the Court enter an Order, substantially in the form submitted attached hereto as **Exhibit B**, granting the relief requested in this Motion on an interim basis, schedule a final hearing on this Motion, and grant such other and further relief as is just and appropriate under the circumstances.

[*Remainder of Page Intentionally Left Blank*]

Dated: October 7, 2013

By: /s/ Robert S. Westermann
Counsel

Robert S. Westermann (VSB No. 43294)
Rachel A. Greenleaf (VSB No. 83938)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone:  (804) 771-9500
Facsimile:   (804) 644-0957
E-mail: rwestermann@hf-law.com
        rgreenleaf@hf-law.com

*Proposed Counsel for the Debtors*
*and Debtors-in-Possession*

**EXHIBIT A**

**Budget**

**DANTRA Healthcare, Inc., et al., Debtors-in-Possession**
**30-Day Cash Collateral Budget**

| Income | |
|---|---|
| Billing Commissions | $212,000 |
| A/R Follow-Up Commissions | $0 |
| Other Income | $500 |
| **Total Gross Income** | **$212,500** |
| | |
| **Expenses** | |
| Automobile Expense | $800 |
| Bank Service Charge | $300 |
| Business Credit Card Expenses | $2,200 |
| Telephone & Internet Services | $2,100 |
| Dues & Subscriptions | $300 |
| Education & Training | $250 |
| Equipment Rental | $930 |
| Insurance | $17,950 |
| License and Permits | $1,667 |
| Payroll & Expenses | $131,200 |
| Postage & Delivery | $10,000 |
| Printing and Reproduction | $1,000 |
| Professional Fees | $7,500 |
| Rent | $11,330 |
| Repairs | $500 |
| Executive Salaries & Benefits (Dana & Tracy Tate) | $7,800 |
| Office Supplies | $5,000 |
| Travel, Entertainment, & Meals | $300 |
| U.S. Trustee's Fees | $650 |
| Utilities | $1,250 |
| **Total Expense** | **$203,027** |
| | |
| **Net Ordinary Income** | **$9473** |

**EXHIBIT B**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| In re:<br><br>DANTRA HEALTHCARE, INC., <u>et al.</u>,[1]<br><br>Debtors. | Chapter 11<br>Case No. 13-_____<br>Jointly Administered |

**INTERIM ORDER (I) AUTHORIZING THE USE OF CASH
COLLATERAL; (II) GRANTING ADEQUATE PROTECTION;
AND (III) SCHEDULING A FINAL HEARING**

Upon consideration of the Motion[2] of the above-captioned Debtors and Debtors-in-Possession (collectively, the "<u>Debtors</u>"), for entry of an Order, pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 4001(a)-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of Virginia (the "<u>Local Bankruptcy Rules</u>"), seeking, among other things, entry of an interim order (the "<u>Interim Order</u>") and a final order (the "<u>Final Order</u>") (i) authorizing the use of cash collateral; (ii) granting adequate protection; and (iii) scheduling a final hearing; and the Court having reviewed the Motion and the Tate Declaration; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1134; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28

---

[1]  The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include:  DANTRA Healthcare, Inc. (8010); S. A. Medical of Virginia, Inc. (7167); King George Medical Center, Ltd. (6801); and Southpointe OBGYN, LLC (5938).  The location of the Debtors' service address is:  125 Olde Greenwich Dr, Ste 160 Fredericksburg, Virginia 22408.

[2]  All capitalized terms used but not otherwise defined in this Order shall have the meanings ascribed to them in the Motion.

U.S.C. §§ 1408 and 1409; and the Court having determined that the relief requested in the

Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-in-

interest; and it appearing that proper and adequate notice of the Motion has been given under

the circumstances and that no other or further notice is necessary; and upon the record herein;

and after due deliberation thereon; and good and sufficient cause appearing therefor, it is

hereby

       **ORDERED, ADJUDGED, AND DECREED that:**

       1.     The Motion is **GRANTED IN PART** and **CONTINUED IN PART**.

       2.     The Debtors are authorized to use Cash Collateral on an interim basis until

November ___, 2013, at _____ (prevailing Eastern Time), subject to the terms and conditions

of this Order and in accordance with the Budget attached hereto as **Exhibit 1**.

       3.     Notwithstanding section 552 of the Bankruptcy Code, the liens of Stellar One

Bank in cash collateral and other assets that existed at the commencement of the case shall

transfer, attach, and become replacement liens in the post-petition cash collateral and other

assets, in the same amount, and with the same extent, validity, and priority that existed at the

time of the filing of the Debtors' petitions.  Virginia Partners Bank and Mary Washington

Healthcare will receive no adequate protection.

       4.     A final hearing on the Motion shall be held on ____ at __ (prevailing Eastern

time), before the Honorable _____ in the United States Bankruptcy Court for the

Eastern District of Virginia, Fifth Floor, Courtroom _____, 701 East Broad Street, Richmond,

Virginia 23219.

       5.     Any party wishing to object to the relief granted herein being granted on a

permanent basis shall file such objection with the Court, together with proof of service

thereof, and served upon: (a) proposed counsel for the Debtors; (b) counsel for any official committee of unsecured creditors that may be appointed in these cases; and (c) the Office of the United States Trustee, so as to be received no later than _____, 2013, at ___ p.m. (prevailing Eastern Time) EST (the "Objection Deadline"). If no objections are filed and served on or before the Objection Deadline, at the Final Hearing, the Court may enter a final order permitting the use of cash collateral by the Debtor.


Dated: _____
Richmond, Virginia

_____
United States Bankruptcy Judge

Entered on Docket:_____


We ask for this:

  _/s/  Robert S. Westermann_____
Robert S. Westermann (VSB No. 43294)
Rachel A. Greenleaf (VSB No. 83938)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone: (804) 771-9500
Facsimile: (804) 644-0957
E-mail: rwestermann@hf-law.com
        rgreenleaf@hf-law.com

*Proposed Counsel for the Debtors*
*and Debtors-in-Possession*

## CERTIFICIATE OF ENDORSEMENT
## <u>UNDER LOCAL BANKRUPTCY RULE 9022-1(C)</u>

I hereby certify, under Local Rule 9022-1, that the foregoing proposed Order has been

endorsed by and/or served upon all necessary parties.

      /s/ Robert S. Westermann   
Counsel

**EXHIBIT 1
TO PROPOSED ORDER**

**Budget**

**DANTRA Healthcare, Inc., et al., Debtors-in-Possession**
**30-Day Cash Collateral Budget**

| Income | |
|---|---|
| Billing Commissions | $212,000 |
| A/R Follow-Up Commissions | $0 |
| Other Income | $500 |
| **Total Gross Income** | **$212,500** |
| | |
| **Expenses** | |
| Automobile Expense | $800 |
| Bank Service Charge | $300 |
| Business Credit Card Expenses | $2,200 |
| Telephone & Internet Services | $2,100 |
| Dues & Subscriptions | $300 |
| Education & Training | $250 |
| Equipment Rental | $930 |
| Insurance | $17,950 |
| License and Permits | $1,667 |
| Payroll & Expenses | $131,200 |
| Postage & Delivery | $10,000 |
| Printing and Reproduction | $1,000 |
| Professional Fees | $7,500 |
| Rent | $11,330 |
| Repairs | $500 |
| Executive Salaries & Benefits (Dana & Tracy Tate) | $7,800 |
| Office Supplies | $5,000 |
| Travel, Entertainment, & Meals | $300 |
| U.S. Trustee's Fees | $650 |
| Utilities | $1,250 |
| **Total Expense** | **$203,027** |
| | |
| **Net Ordinary Income** | **$9473** |