## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

In re:

DANTRA HEALTHCARE, INC., et al.,[1]

Debtors.

Chapter 11
Case No. 13-35419
Jointly Administered

## MOTION OF THE DEBTORS PURSUANT TO 11 U.S.C. §§ 105, 351, AND 363, FOR ENTRY OF AN ORDER AUTHORIZING THE WINDING DOWN OF THE KING GEORGE MEDICAL CENTER, LTD., AND RELATED RELIEF AND MEMORANDUM IN SUPPORT THEREOF

DANTRA Healthcare, Inc., and its affiliates, as Debtors and Debtors-in-Possession (collectively, the "Debtors"),[2] by their proposed counsel, hereby moves (the "Motion"), pursuant to sections 105 and 363 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order authorizing the Debtors to close the King George Medical Center, Ltd. ("King George") and to approve of the disposal of patient records in accordance with section 351 of the Bankruptcy Code.  In support of this Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

---

[1]   The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include:  DANTRA Healthcare, Inc. (8010); S. A. Medical of Virginia, Inc. (7167); King George Medical Center, Ltd. (6801); and Southpointe OBGYN, LLC (5938).  The location of the Debtors' service address is:  125 Olde Greenwich Dr, Ste 160 Fredericksburg, Virginia 22408.

[2]   Capitalized terms used but not defined herein shall have the meanings set forth in the Tate Declaration.

2.      Venue in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division, with respect to the bankruptcy proceedings and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are Sections 105, 351, and 363 of the Bankruptcy Code and Bankruptcy Rule 6004.

## FACTUAL BACKGROUND

4.      On the date hereof (the "Petition Date"), each of the Debtors filed with the Court voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, commencing the above-captioned Chapter 11 cases.

5.      The Debtors continue in the possession of their property and continue to operate and manage their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      No trustee or examiner has yet been appointed in these cases, and no committees have yet been appointed or designated.

7.      S. A. Medical of Virginia, Inc. ("S. A. Medical") provides medical billing services to medical practices.

8.      DANTRA Healthcare, Inc. ("DANTRA") is the shell parent organization of King George and Southpointe OBGYN, LLC ("Southpointe").

9.      King George is the only affiliate that currently provides actual medical services, which it does through three different practices:   KGMC Family Practice, Gateway Medical Urgent Care, and King George Pediatrics.

10.      Southpointe is no longer operating.  The majority of the assets of Southpointe was sold pre-petition.  The only remaining asset of Southpointe is its accounts receivable.

11.    The Debtors are borrowers under numerous loans which contains cross-guarantees and cross-collateralization provisions.

12.    A full description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' Chapter 11 cases, is set forth in full in the Declaration of Dana P. Tate, President of S. A. Medical, in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings (the "Tate Declaration"), which was filed contemporaneously with this Motion and which is incorporated herein by reference.  Additional facts in support of the specific relief sought herein are set forth below.

13.    Specifically, King George has been operating at a substantial loss for an extended period of time.  Over the past year, according to the Debtors' profit and loss statements, King George experienced a net loss of ($111,698.33).  The Debtors project that King George's expenses will exceed income by over $50,000 for the month of October 2013 alone.

14.    The Debtors, in the exercise of their business judgment, have determined that King George is no longer a viable business.  The Debtors believe that closing the King George practice and rejecting the King George leases is in the interests of the Debtors, their estates, and all parties-in-interest, as it removes a large financial drain and allows S. A. Medical, a successful practice, to survive and thrive for the benefit of the estate, creditors, and parties-in-interest.[3]

## RELIEF REQUESTED

15.    In exercising the Debtors' business judgment, the Debtors have determined that the King George business operations will not benefit from reorganization and that closing the King George businesses will benefit the Debtors, their estates, their creditors, and all other parties-in-interest.  Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors hereby

---

[3] The Debtors will file a separate motion to reject the leases related to the King George businesses.

seek an order, substantially in the form attached hereto as **Exhibit C** (the "Order"), authorizing the winding down of the King George business, in accordance with the outline attached as **Exhibit D**.  The Debtors further request that they be allowed to dispose of King George patient records in accordance with section 351 of the Bankruptcy Code.  Because the Debtors believe that compliance with applicable regulations will require thirty (30) days to close the business after court authorization, the Debtors further request that the Order become effective on entry.

### BASIS FOR RELIEF

16.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."  11 U.S.C. § 363(b)(1).  A bankruptcy court should approve a transaction that is not in the ordinary course of a debtor's business if the debtor can demonstrate that it exercised sound business judgment in determining to enter the transaction.  See Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983); see also Myers v. Martin (In re Martin), 91 F.3d 389, 396 (3d Cir. 1996) (citing Schipper v. Fulton State Bank, (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991)); In re Del. & Hudson Ry. Co., 124 B.R. 169, 179 (D. Del. 1991); Dai-Ichi Kangyo Bank v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153-54 (Bankr. D. Del. 1999).

17.     If the debtor articulates a valid business justification, a presumption arises "that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).  This business judgment "standard is satisfied when a debtor shows that the action

to be taken will benefit the estate; it need not show that continued performance would result in an actual loss of value from the estate." In re Farmland Indus., Inc., 294 B.R. 903, 913 (Bankr. W.D. Mo. 2003).

18.    Additionally, section 105(a) of the Bankruptcy Code gives the Court broad authority under its equitable powers to fashion any order or decree that would preserve or protect the value of the debtor's assets. See, e.g., Adelphia Commc'ns Corp. v. Rigas (In re Adelphia Commc'ns Corp.), No. 02 Civ.8495 GBD, 02-41729 REG, 2003 WL 21297258, at *4 (S.D.N.Y. June 4, 2003).

19.    The term "health care business" is a defined term under the Bankruptcy Code and

(A)    means any public or private entity (without regard to whether that entity is organized for profit or not for profit) that is primarily engaged in offering to the general public facilities and services for—
    (i)    the diagnosis or treatment of injury, deformity, or disease; and
    (ii)    surgical, drug treatment, psychiatric, or obstetric care; and
(B)    includes—
    (i)    any—
        (I)    general or specialized hospital;
        (II)    ancillary ambulatory, emergency, or surgical treatment facility;
        (III)    hospice;
        (IV)    home health agency; and
        (V)    other health care institution that is similar to an entity referred to in subclause (I), (II), (III), or (IV); and
    (ii)    any long-term care facility, including any—
        (I)    skilled nursing facility;
        (II)    intermediate care facility;
        (III)    assisted living facility;
        (IV)    home for the aged;
        (V)    domiciliary care facility; and
        (VI)    health care institution that is related to a facility referred to in subclause (I), (II), (III), (IV), or (V), if that institution is primarily engaged in offering room, board, laundry, or personal assistance with activities of daily living and incidentals to activities of daily living.

11 U.S.C. § 101(27A).

20.     Section 351 of the Bankruptcy Code provides that for an alternative patient record disposal system if a health care business "does not have a sufficient amount of funds to pay for the storage of patient records in the manner required under applicable Federal or State law."  11 U.S.C. § 351.  Under the Bankruptcy Code's system, to properly dispose of records, the health care business must:

> (A)    promptly publish notice, in 1 or more appropriate newspapers, that if patient records are not claimed by the patient or an insurance provider (if applicable law permits the insurance provider to make that claim) by the date that is 365 days after the date of that notification, the trustee will destroy the patient records; and
>
> (B)    during the first 180 days of the 365-day period described in subparagraph (A), promptly attempt to notify directly each patient that is the subject of the patient records and appropriate insurance carrier concerning the patient records by mailing to the most recent known address of that patient, or a family member or contact person for that patient, and to the appropriate insurance carrier an appropriate notice regarding the claiming or disposing of patient records.

11 U.S.C. § 351(1).  If after providing this notice, the patient records are not claimed within 365 days, the health business must then

> mail, by certified mail, at the end of such 365-day period a written request to each appropriate Federal agency to request permission from that agency to deposit the patient records with that agency, except that no Federal agency is required to accept patient records under this paragraph.

11 U.S.C. § 351(2).  If the contacted federal agency refuses to accept the records, then the health care business

> shall destroy those records by—
> (A)    if the records are written, shredding or burning the records; or
> (B)    if the records are magnetic, optical, or other electronic records, by otherwise destroying those records so that those records cannot be retrieved.

11 U.S.C. § 351(3).

21.    The decision to wind down the affairs of King George falls well within the Debtors' sound business judgment.  Given the operational losses at King George and the related cash drain on the Debtors' overall business operations, the Debtors believe that the cessation and orderly wind down of the King George practices is in the best interests of the Debtors, their estates, creditors, and all parties-in-interest.  Immediate relief to close King George is necessary because the Debtors lack sufficient funds to operate the King George businesses, which are projected to sustain substantial cash losses in the future.  Closure of King George would not only benefit the estate, but would prevent a continuing, actual loss of value from the estate. Accordingly, the Debtors believe that they have satisfied the business judgment standard.  See In re Farmland Indus., Inc., 294 B.R. at 913.

22.    The Debtors appreciate and understand the importance of maintaining and correctly disposing of patient records.  The Debtors seek court authorization to use the modified time periods for disposal of patient records as provided by the Bankruptcy Code.  King George is a health care business, as defined by the Bankruptcy Code.[4]  As such, the court may allow King George to retain patient records for a shortened time if King George lacks sufficient funds to retain the records for a longer state or federal retention period.  King George does not have sufficient funds to maintain patient records for six years, as required by the Virginia Code.  **See Exhibit A** (showing King George's expected operating loss for the month of October 2013).

23.    The Debtors will provide the required notice to the patients pursuant to the Bankruptcy Code.  The Debtors will publish a notice in an appropriate newspaper, as required by

---

[4]    King George is a health care business.  DANTRA and S. A. Medical are not health care businesses.  When Southpointe was operating, it was a health care business, but the medical practice was sold pre-petition.

section 351(a)(1), and in compliance with applicable state law.[5]   The Debtors will also send

notices to the patients and their insurance carriers as required by section 365(b)(2).  A copy of

the proposed notice that will be mailed is attached as **Exhibit B**.

24.      For any patients who respond to the notices, the Debtors will provide the patient

records in accordance with state law.  On request, the Debtors will also provide patient referrals

to other medical practices.

25.      The Debtors believe that the process of sending out the required notices and

winding down the business will take thirty (30) days.  After that thirty-day period, the Debtors

will continue to maintain the King George patient records in accordance with the Bankruptcy

Code and state law requirements  Outside of maintaining these records, the Debtors anticipate

that the process of winding down King George will be complete within thirty days, including the

rejection of the King George leases.

## RESERVATION OF RIGHTS

26.      The Debtors expressly reserves the right to amend, modify, and/or supplement the

relief requested in this Motion in all respects, including, but not limited to, the right to withdraw

this Motions, in whole or in part, prior to or at the Confirmation Hearing.

---

[5]   Section 8.01-324 of the Virginia Code describes what newspapers may use for legal notices and publications,
including that required for the closure of a medical practice.  Specifically, the newspaper must:

1.  Have a bona fide list of paying subscribers;
2.  Have been published and circulated at least once a week for twenty-four consecutive weeks
    without interruption for the dissemination of news of a general or legal character;
3.  Have a general circulation in the area in which the notice is required to be published;
4.  Be printed in the English language; and
5.  Have a second-class mailing permit issued by the United States Postal Service.

Va. Code Ann. § 8.01-324(A).

## NOTICE

27.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the Eastern District of Virginia; (ii) the entities listed on the Debtors' list of creditors holding the twenty largest unsecured claims; (iii) known counsel for the Debtors' secured and/or unsecured creditors; (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002; and the Virginia Department of Health Professions.   The Debtors submit that, under the circumstances, no other or further notice of the Motion is required.

## NO PRIOR REQUEST

28.     No prior motion for the relief sought herein has been made by the Debtors to this or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as **Exhibit** **C** (i) authorizing the Debtors to close King George; (ii) authorizing the retention and eventual disposal of patient records in accordance with section 351 of the Bankruptcy Code; and (iii) granting such other and further relief as the Court deems just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: October 7, 2013           By: /s/ Robert S. Westermann
                                                Counsel

Robert S. Westermann (VSB No. 43294)
Rachel A. Greenleaf (VSB No. 83938)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone:  (804) 771-9500
Facsimile:   (804) 644-0957
E-mail: rwestermann@hf-law.com
        rgreenleaf@hf-law.com

*Proposed Counsel for the Debtors*
*and Debtors-in-Possession*

**EXHIBIT A**

**King George Thirty-Day Budget**

**King George Medical Center, Ltd.**
**Thirty-Day Budget**

**INCOME**

| | |
|---|---:|
| Patient Fees | $154,000 |
| Occ Health Fees | $300 |
| Other Income | $0 |
| **TOTAL GROSS INCOME** | **$154,300** |

**EXPENSE**

| | |
|---|---:|
| Advertising | $0 |
| Automobile Expense | $470 |
| Bank Service Charge | $830 |
| Telephone and Internet Services | $2,900 |
| Contributions | $0 |
| Dues & Subscriptions | $2,210 |
| Education & Training | $1,100 |
| Equipment Rentals | $1,050 |
| Insurance | $14,705 |
| Interest Expenses | $4,954 |
| License & Permits | $1,336 |
| Payroll Expenses | $137,930 |
| Postage & Delivery | $100 |
| Professional Fees | $8,004 |
| Rent | $20,400 |
| Repairs | $820 |
| Office and Medical Supplies | $11,195 |
| Utilities | $700 |
| **TOTAL EXPENSE** | **$203,750** |

| | |
|---|---:|
| **NET ORDINARY INCOME** | **-$49,450** |

**EXHIBIT B**

**Proposed Notice to Patients**

### KING GEORGE MEDICAL CENTER

11131 Journal Parkway
King George, VA 22485

October 14, 2013

Re: Practice Closure

Dear Patient,

  It is with great regret and heavy hearts that we must notify you of the closure of King George Medical Center, Ltd in its entirety, to include King George Medical Center Dahlgren Campus; King George Pediatrics Gateway Campus; and Gateway Medical Urgent Care.

Gateway Medical Urgent Care will be closing to patient care on October 18, 2013. King George Medical Center - Dahlgren Campus and King George Pediatrics – Gateway Campus primary care will continue with normal operations seeing/treating patients for the next 30 days and will end on November 15, 2013. We strongly encourage you to schedule an appointment for a final visit and any prescription refills you may require.

Should you need assistance in locating new medical care, we encourage you to contact the Medical Society of Virginia at (804) 353-2721 or Mary Washington Healthcare at (540) 741-1100.

For obtaining or transferring copies of your medical records to another medical provider within a reasonable time, we are including a medical release form with this letter for your convenience. Your written authorization and proper completion of this form is required. Please return the completed and signed form to either our Dahlgren or Gateway Campus or by mailing to:

**King George Medical Center, Ltd.**
**P.O. Box 845**
**Fredericksburg, VA 22404**

There is a fee for costs of copying, mailing or delivering copies of your medical records. This fee is regulated by the Commonwealth of Virginia and is set as $10.00.  If you do not request your medical records within one year from the date of this notice, they will be destroyed.

We would like to thank you for allowing us the opportunity to provide you and your family with exceptional medical care over the last 8 years. It has been our pleasure to work with the King George community where we have diligently strived to provide the best care in all locations for our patients. Unfortunately, in today's tumultuous healthcare environment we have found we are unable to maintain operations. If you have any questions, please contact the Practice

October 14, 2013
Page 2

Administrator Ms. Rose Wallace at (540) 775-8009. We appreciate your understanding during this time. We cannot thank you enough for having entrusted your health care needs to us and having allowed us to manage your care.

Sincerely,

Dana P. Tate

President/CEO

**EXHIBIT C**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

In re:

DANTRA HEALTHCARE, INC., et al.,[1]

    Debtors.

Chapter 11
Case No. 13-_____
Jointly Administered

### ORDER GRANTING MOTION OF THE DEBTORS PURSUANT TO 11 U.S.C. §§ 105, 351, AND 363 FOR ENTRY OF AN ORDER AUTHORIZING THE WINDING DOWN OF THE KING GEORGE MEDICAL CENTER, LTD., AND RELATED RELIEF

Upon consideration of the Motion (the "Motion")[2] of the above-captioned debtors and

debtors-in-possession (collectively, the "Debtors"), for entry of an Order pursuant to sections

105 and 363 of Title 11 of the United States Code (the "Bankruptcy Code") authorizing the

Debtors to wind down the business of King George Medical Center, Ltd. ("King George"), as

more fully set out in the Motion; the Motion being a core proceeding pursuant to 28 U.S.C.

§ 157(b); and due and proper notice of the Motion having been provided to the necessary parties;

and it appearing that no other or further notice need be provided; and the Court having

determined that the relief sought in the Motion is in the best interests of the Debtors, their

creditors, and all parties-in-interest; and the Court having determined that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and the Court

having found that the winding down of the King George business (a) constitutes an exercise of

sound business judgment by the Debtors, (b) is appropriate and necessary under the

---

[1]     The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include:  DANTRA Healthcare, Inc. (8010); S. A. Medical of Virginia, Inc. (7167); King George Medical Center, Ltd. (6801); and Southpointe OBGYN, LLC (5938).  The location of the Debtors' service address is:  125 Olde Greenwich Dr, Ste 160 Fredericksburg, Virginia 22408.

[2]     Capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

circumstances, and (c) is warranted and permissible under section 363 of the Bankruptcy Code;

and after due deliberation and sufficient cause appearing therefor,

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED**.

2.      Pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, the Debtors

are hereby authorized to wind down the operations and affairs of King George in accordance

with the Practice Closure Plan.

3.      The Proposed Notice to Patients is deemed good and sufficient notice of the

closure of King George.

4.      The Debtors may retain patient records in the manner specified by section 351 of

the Bankruptcy Code.  After retaining the records for 365 days, the Debtors may then destroy

any remaining patient records in accordance with section 351 of the Bankruptcy Code.

5.      The Debtors are authorized to take all actions necessary to effectuate the relief

granted pursuant to this Order.

6.      Notwithstanding any Bankruptcy Rule to the contrary, this Order shall be

immediately effective and enforceable upon its entry.

7.      This Court shall retain jurisdiction to hear and determine all matters arising from

or related to the interpretation and/or implementation of this Order.

Dated: _____
Richmond, Virginia

_____
United States Bankruptcy Judge

We ask for this:


  /s/  Robert S. Westermann
Robert S. Westermann (VSB No. 43294)
Rachel A. Greenleaf (VSB No. 83938)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone:  (804) 771-9500
Facsimile:  (804) 644-0957
E-mail: rwestermann@hf-law.com
      rgreenleaf@hf-law.com

*Proposed Counsel for the Debtors*
*and Debtors-In-Possession*

## CERTIFICATE OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

     I hereby certify, under Local Rule 9022-1, that the foregoing proposed Order has been endorsed by and/or served upon all necessary parties.


         /s/ Robert S. Westermann
            Counsel

3

**EXHIBIT D**

**Timeline for Closing the King George Practices**



# PRACTICE CLOSURE PLAN

All dates are approximate and may be subject to change should any currently unknown issues should arise.

| DATE | ACTION |
|---|---|
| October 7, 2013 | Filing of Chapter 11 |
| October 7 – 11 | Prepare staff and resources for processes of handling patient chart transfer requests, medication refill requests, and other pending patient testing results. |
| October 11, 2013 | Advise Mary Washington Healthcare, Spotsylvania Regional Medical Center, The Medical Society of Virginia, King George County Board of Supervisor, and Department of Fire/EMS of pending practice closures. |
| October 14, 2013 | INFORM PATIENTS OF PENDING PRACTICE CLOSURES (Mail Patient Letter / Medical Records Transfer Request.  Begin run of notice of practice closure/patient chart requests in The Free-Lance Star.  Post signage at each practice location advising the same.  Begin filling patient medical records transfer requests. |
| October 18, 2013 | Urgent Care Services – Last day of seeing / treating urgent care patients. |
| October 21 – 23, 2013 | Ensure provider completion of all medical chart entries and order results. |
| October 25, 2013 | Lay off appropriate urgent care medical staff and ancillary staff while retaining appropriate urgent care ancillary staff to assist in performance of patient chart transfers for all practices. |
| October 26, 2013 | Transfer Digital X-Ray Equipment. |
| November 1, 2013 | Vacate urgent care space and turn over to Landlord emptied and cleaned. Turn off of utilities and have phone number forwarded to the pediatrics practice location. |
| November 15, 2013 | Adult and Pediatric Primary Care Services – last day of seeing/treating patients. |
| November 21, 2013 | Transfer medical records custodianship to S.A. Medical of Virginia to continue to fulfill patient requests for chart transfers or copies of charts. |
| November 18- 20, 2013 | Ensure provider completion of all medical chart entries and order results |
| December 2, 2013 | Insure all vaccines, toxoids, pharmaceutical samples are properly returned or destroyed in accordance with regulations. |

| DATE | ACTION |
|---|---|
| December 2-5, 2013 | Vacate pediatric space and adult primary care space. Forward all phone lines to S.A. Medical of Virginia. |
| December 2, 2013 | Run notice in The Free –Lance Star advising that all practices are closed and information on how to obtain copies of medical charts. |